We have considered the other points raised in defendant's brief and find them to be without merit.

The judgment of conviction is affirmed.

STATE OF NEW JERSEY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, PLAINTIFF-RESPONDENT, v. BERNARD McNALLY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 20, 1966—Decided June 29, 1966.

514

Before Judges GAULKIN, LABRECQUE and BROWN.

*Mr. John J. Flynn* argued the cause for appellant (*Mr. Thomas E. Durkin, Jr.,* attorney).

*Mr. Max Spinrad,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

PER CURIAM. McNally, a truck driver employed by P. Ballentine and Sons (Ballentine), pleaded guilty to an indictment charging him with bookmaking contrary to *N. J. S.* 2A:112–3. On October 21, 1965 he was placed on probation for three years and fined $1,000. On December 1 the Division of Alcoholic Beverage Control (ABC) wrote him that it had learned of his conviction and that "To make necessary determination with respect to your eligibility to be employed in the alcoholic beverage industry, it is requested that you appear at this office for the purpose of discussing this matter * * *."

McNally came to the ABC office, where he was interviewed. The record does not reveal what transpired at this interview. However, McNally makes no claim that the interview was inadequate or unfair. He expressly disavows any desire for another hearing. We must therefore assume that at that interview he told the ABC everything that he wished to say as to the facts which led to his conviction and in mitigation of his offense.

After this interview, ABC wrote Ballentine as follows:

"This is to advise that Mr. Bernard McNally, 1407 Washington Avenue, Pompton Lakes, has today appeared at this office in response to our letter of December 1, 1965.

Mr. McNally stated that in November 1965 he was convicted in the Essex County Court for bookmaking (horses), as a result thereof received a suspended sentence, fined $1,000, and placed on probation for three years. Mr. McNally further stated that he is presently employed by you as a truck driver.

In the opinion of the Director, the aforesaid conviction involves moral turpitude. Persons convicted of any crime involving moral turpitude are disqualified from not only holding a liquor license but also from being employed by or connected in any business capacity whatsoever with any New Jersey licensee. *R. S.* 33:1–25, 26. * * * [S]uch persons may not be employed nor their services utilized in any way on licensed premises or in furtherance of a licensed business, regardless of whether or not they in fact handle alcoholic beverages or whether or not their services are utilized regularly, casually or only part-time. * * *

* * *. You are therefore directed, if you have not already done so, to discontinue forthwith your employment in any way of McNally so long as he remains disqualified. You should bear in mind that your failure to abide by this directive is cause for suspension or revocation of your license."

ABC sent a copy of this letter to McNally, who then appealed to this court. *R. R.* 4:88–8. *Cf. Severini v. State, etc., Division of Alcoholic Beverage Control,* 82 *N. J. Super.* 1 (*App. Div.* 1964), but see *Kravis v. Hock,* 136 *N. J. L.* 161 (*E. & A.* 1947).

His appeal is based upon the proposition, quoting from *State Board of Medical Examiners v. Weiner,* 68 *N. J. Super.* 468 (*App. Div.* 1961), that in order to permit a license revocation because of such a conviction "it must be found that moral turpitude is of the essence of the crime for which conviction has been obtained, necessarily ascertainable from the legal constituents of the crime and without inquiring into the facts and circumstances leading up to the conviction." He argues that moral turpitude is not "of the essence of the crime" of bookmaking, *i. e.,* it is conceivable that one might be convicted of bookmaking under circumstances free of moral turpitude, and, therefore, since ABC may not look into the underlying facts, bookmaking must be held not to be a crime involving moral turpitude. We disagree.

At least since 1934 it has been the policy of ABC to look at the underlying facts. In that year, when Newark inquired whether adultery was a crime involving moral turpitude, Commissioner Burnett answered (*ABC Bulletin* 45, *Item No.* 18) :

"Turpitude is a conclusion based on or an inference derived from the facts of a given case. In every case of adultery it is a breach of plighted troth and a personal sin, but we cannot jump from that to the general conclusion that every commission signifies shameful wickedness or constitutes, *per se,* depravity. Everything depends on the facts.

\*      \*      \*      \*      \*      \*      \*      \*

The duty to hear the facts and make the decision in the first instance is upon the issuing authority."

In 1937 the licensee involved sought a transfer. It was challenged before the ABC, which held that under the facts and circumstances of the case the crime (adultery) was not one involving moral turpitude. (*Bulletin* 160, *Item* 10.) The challenger sought a writ of *certiorari,* which Justice Parker

denied in an unreported opinion. See *Bulletin* 163, *Item* 10 (1937).

In *Case No.* 246, *Bulletin* 293, *Item* 10 (1939) the Commissioner held: "A conviction for commercialized gambling may or may not constitute conviction of a crime involving moral turpitude, depending upon the circumstances of the particular case."

Conflicting rules prevail in other jurisdictions as to whether the underlying facts are to be considered. See Annotations, 52 *A. L. R. 2d* 1314 (1959) and 95 *L. Ed.* 899 (1951); *Lowe v. Herrick,* 170 *Kan.* 34, 223 *P. 2d* 745 (*Sup. Ct.* 1950); *Repouille v. United States,* 165 *F. 2d* 152 (2 *Cir.* 1947); *Lorenz v. Board of Medical Examiners,* 46 *Cal. 2d* 684, 298 *P. 2d* 537 (*Sup. Ct.* 1956). In *State Board of Medical Examiners v. Weiner, supra,* we specifically refrained from deciding that it was improper for an administrative agency to look to the facts, even though the statute involved in *Weiner* lent itself to a narrower construction than the one at bar. Moreover, in the discussion in *Weiner* we said "we cannot altogether accept appellant's notion that manslaughter * * * can under no circumstances involve moral turpitude," and "in a wide range of crimes, including manslaughter, the fact of moral turpitude may not necessarily be ascertainable from either the indictment or the record of conviction, but may have to be sought in the details of the manner in which the particular defendant perpetrated the offense" (at *p.* 488). See also *Lowe v. Herrick, supra; Weinstein v. Division of Alcoholic Beverage Control,* 70 *N. J. Super.* 164, 169 (*App. Div.* 1961); *Newark v. Department of Civil Service,* 68 *N. J. Super.* 416 (*App. Div.* 1961). In *Severini v. State, supra,* it was pointed out that "Severini requested a hearing before the Division as to his eligibility for employment. A hearing was had and Severini appeared and testified in his own behalf," even though the conviction was for "criminally concealing and withholding stolen and wrongfully acquired property." See also *Newark v. Department of Civil Service, supra,* which involved a conviction for evasion of income taxes.

In *Weiner* we did not need to decide whether or not the underlying facts might be considered, because neither the conviction of manslaughter nor the underlying facts which led to that conviction demonstrated moral turpitude. Conversely, in *Weinstein, supra,* both the conviction and the underlying facts bespoke moral turpitude. In the case at bar we must do so, and we hold that in so far as licenses under *Title 33* are involved, the ABC may, and when the convicted individual requests it must, look at the underlying facts to determine whether there existed moral turpitude, unless the crime is of such a nature that moral turpitude or its absence must be conclusively presumed.

McNally contends that an administrative agency should not and therefore may not be entrusted with the task of determining whether a particular crime involves moral turpitude. On the contrary, when dealing with licensing it seems to us that the agency entrusted with the granting and supervision of licenses should be permitted to decide, in the first instance, whether a crime involved disqualifying moral turpitude. After all, what may be disqualifying moral turpitude in one occupation—for example, an attorney—may not necessarily be so with reference to another—for example, a liquor salesman. *Cf. Weiner, supra,* at *pp.* 477–478, as to attorneys; *Kravis v. Hock,* 135 *N. J. L.* 257, 262 (*Sup. Ct.* 1947), reversed on other grounds, 136 *N. J. L.* 161 (*E. & A.* 1947). On the other hand, we cannot agree with ABC's contention that all bookmaking necessarily involves moral turpitude.

There being no criticism or challenge of the hearing given McNally by the ABC on December 1, and no further hearing being requested, we must assume that what the ABC then learned was sufficient to justify the Director's action. It is therefore affirmed.